## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THOMAS DRAKE

    and

DIANE ROARK

    and

ED LOOMIS

    and

J. KIRK WIEBE

    and

WILLIAM BINNEY

                Plaintiffs,

     v.

KEITH ALEXANDER, former Director
National Security Agency
9800 Savage Road, Suite 6711
Fort Meade, MD 20755-6711

    and

MICHAEL HAYDEN, former Director
National Security Agency
9800 Savage Road, Suite 6711
Fort Meade, MD 20755-6711

    and

LANNY A. BREUER, former
Assistant Attorney General of the Criminal Division
Covington & Burling LLP
One City Center
850 Tenth Street, NW

**COMPLAINT**

Civil Action No. _____

Washington, DC 20001-4956

 and

JOHN CHRIS INGLIS, former Deputy Director
National Security Agency
9800 Savage Road, Suite 6711
Fort Meade, MD 20755-6711

 and

VITO T. POTENZA, former General Counsel
National Security Agency
9800 Savage Road, Suite 6711
Fort Meade, MD 20755-6711

 and

STEVEN A. TYRRELL, former prosecutor
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

 and

NATIONAL SECURITY AGENCY
9800 Savage Road, Suite 6711
Fort Meade, MD 20755-6711

 and

US. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

 and

ROBERT S. MUELLER, III
Former Director, Federal Bureau of Investigation
935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001

 and

FEDERAL BUREAU OF INVESTIGATION
935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001

                    Defendants.

* Plaintiffs addresses are not listed here for security reasons.
They may be reached c/o Larry Klayman, Esq.
2020 Pennsylvania Avenue, N.W., Suite 800
Washington, D.C. 20006.

## COMPLAINT

Plaintiffs sue Defendants, as individuals and in their official and unofficial capacities, for

violations when Robert S. Mueller was Director of the Federal Bureau of Investigation ("FBI")

of their constitutional and civil rights, invasion of privacy, and retaliation for their roles as

whistleblowers, including illegal searches and seizures, physical invasion of their residences and

places of business, illegal detention as temporary false imprisonment, confiscation of property,

cancellation of security clearances leading to the loss of their jobs and employment, intentional

infliction of emotional distress, harassment and intimidation.  As grounds therefore, Plaintiffs

allege as follows:


## I.      INTRODUCTION  AND NATURE OF THE ACTION

1.  This is a case of the abuse of false and fraudulent claims of national security to target

    critics and silence criticism of government officials for the benefit of public officials to

    avoid responsibility and accountability for their actions in government, by abusing false

    claims of national security to harass and intimidate and harm the Plaintiffs.

2.  In retaliation against the Plaintiffs for – confidentially within proper government

    channels – filing whistleblower complaints with Congress and the Inspector General

("IG") of the U.S. Department of Defense ("DoD"), the Defendants knowingly and intentionally fabricated a claim of the Plaintiffs involvement in leaks of national security information to <u>New York Times</u> reporters Eric Lichtblau and James Risen, and used this fabricated claim for retaliation, illegal searches and seizures, physical invasion of their residences and places of business, temporary false imprisonment, the confiscation of their property, cancellation of security clearances leading to the loss of their jobs and employment, intentional infliction of emotional distress, harassment and intimidation.

3. The Defendants knew or should have known – including because the National Security Agency ("NSA") was tracking all domestic telephone calls for the supposed purpose of protecting national security – that there was no evidence that Plaintiffs were the source of the reports to the New York Times. Others admitted to being sources but were never prosecuted. One of the main actual leakers was attorney Thomas Tamm of the U.S. Department of Justice ("DoJ") who worked with the U.S. Foreign Intelligence Surveillance Act ("FISA") Court and others.

4. The Defendants falsely and fraudulently used the pretense of tracking the leaks to attack, harass, and intimidate the Plaintiffs, although they cooperated with the investigation.

5. The affidavit used to obtain search warrants contained false information, sworn under oath, used to obtain search warrants to harass the Plaintiffs, seize their property, and damage the Plaintiffs. The false information included that Plaintiff Binney had made incriminating statements in a phone call from Plaintiff Roark to Binney, which never occurred and Binney never said occurred, and that a paper in the Plaintiffs' possession that Binney freely provided to the FBI describing the THINTHREAD system, was classified, when in fact it was not classified. These and other falsehoods were claimed as

the basis to raid all of the Plaintiffs' homes without verifying classification of the document. The rest of the affidavit was mere innuendo, with no evidence pertaining to the <u>New York Times</u> leak.

6.  Although the violations of the rights were implemented by FBI Director Robert Mueller, the Plaintiffs were able to discover the details sufficient to bring suit only recently in 2013, only after the unsealing by the courts of the affidavits that were used to procure search warrants and other operative documents.

## II.        <u>JURISDICTION AND VENUE</u>

7.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. §§ 2333 and 2334.

8.  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343 (a)(3) and 42 U.S.C. § 1983.

9.  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) under diversity of citizenship. On information and belief the Plaintiffs and Defendants herein are citizens of different states and thus diversity exists.

10. The amount in controversy exceeds $75,000.

11. Venue is proper for Defendants pursuant to 28 U.S.C. § 1391(f)(4), 18 U.S.C. § 2334(a) and 28 U.S.C. §§ 1391(b) and 1391(d), because the majority of the actions and omissions by the Defendants were undertaken within or initiated from the District of Columbia.

## III.        <u>THE PARTIES</u>

12. Plaintiff Ed Loomis is a natural person who was employed for 37 years with the NSA as a Senior Technical Expert and senior manager in the technology and research organizations, Bachelor of Science (B.S.) in Mathematics from Capital University and

Master of Public Administration (M.P.A.) in Computer Science from American University, managed the development of the "THINTHREAD program." Loomis retired from the NSA in October 2001. Loomis also received the Meritorious Civilian Service Award from NSA, and worked an additional 5 1/2 years as a private systems architect and subcontractor for NSA from December 2002 through July 26, 2007, when Defendants suspended his security clearance on July 26, 2007.

13. Plaintiff Thomas A. Drake is a natural person who was employed by the US Air Force (intelligence and electronic warfare aircrew member), the CIA (imagery analyst) and the U.S. Navy (intelligence officer at the National Military Joint Intelligence Center) over a 14 year period, 12 years in private industry as a government contractor and information technology and management consultant/specialist with additional professional experience and education in the areas of organizational development, leadership, software, test and systems engineering, systems acquisition and for almost 7 years with the NSA as a Senior Executive with positions in change management, technical director leadership, program management, software/IT expert and advisor to senior NSA management, resigning from NSA in April 2008.

14. Plaintiff J. Kirk Wiebe is a natural person who was employed for four years with the U.S. Air Force Security Service, over 32 years with the NSA as a manager and senior information analyst. He is a recipient of NSA's second highest award (Meritorious Civilian Service Award) and Meritorious Unit Citation awarded by the Director of Central Intelligence. He retired from NSA in October 2001. He holds a Master's degree from Indiana University in Russian.

15. Plaintiff William Binney is a natural person who was employed for 4 years with the Army Security Agency, and 32 years at NSA as a cryptologist and expert on signals "externals." He defined the analysis business process for "THINTHREAD program." He retired from NSA in October 2001. He holds a B.S. degree in mathematics from Penn State University.

16. Plaintiff Diane Roark is a natural person who was employed in the Executive Branch at the U.S. Department of Energy (International); the U.S. Department of Defense (ISP/Strategic Forces Policy, START Policy); and the National Security Council Staff, Intelligence Programs. In the Legislative Branch, Roark was employed for 17 years in the Professional Staff, House Permanent Select Committee on Intelligence, with NSA being her primary account over the last five years. She retired in April, 2002.

17. Defendant Robert S. Mueller III was at the times relevant to the acts and omissions at issue herein the Director for the Federal Bureau of Investigation ("FBI")

18. Defendant Keith Alexander was at the times relevant to the acts and omissions at issue herein the Director of the NSA.

19. Defendant John Chris Inglis was at the times relevant to the acts and omissions at issue herein the Deputy Director of the NSA.

20. Defendant Vito T. Potenza was at the times relevant to the acts and omissions at issue herein the General Counsel of the NSA.

21. Defendant Lt. General Michael Hayden was Director of the NSA from 1999 to 2005.

22. Defendant Lanny A. Breuer was at the times relevant to the acts and omissions at issue herein the Assistant Attorney General of the Criminal Division, U.S. Department of Justice

23. Defendant Steven A. Tyrrell was at the times relevant to the acts and omissions at issue herein the initial federal prosecutor working against the Plaintiffs.

24. Defendant National Security Agency is an agency of the U.S. Government about whom the Plaintiffs confidentially reported information of waste, fraud and abuse and to whose senior officials two of the Plaintiffs openly objected regarding post-9/11 domestic surveillance. NSA officials conspired with the DoD and "DoJ" to violate the Plaintiffs rights.

25. Defendant U.S. Department of Defense is an agency of the U.S. Government to whose Inspector General the Plaintiffs confidentially reported information of waste, fraud and abuse and who conspired with the NSA and DoJ to violate the Plaintiffs rights.

26. Defendant U.S. Department of Justice is an agency of the U.S. Government which conspired with NSA and DoD to violate the Plaintiffs rights.

## IV.        FACTS COMMON TO ALL COUNTS

27. The Defendants acting in concert and each of them individually have conspired and contributed to false accusations against the Plaintiffs causing illegal searches and seizures against the Plaintiffs and other injuries.  The harm against the Plaintiffs was also carried out by many other government officials and personnel who were only acting on the orders of and misinformation from the Defendants, including line FBI Special Agents.

28. The Plaintiffs, all and each of them individually, are the victims of illegal retaliation, illegal searches and seizures, malicious prosecution and/or investigation, abuse of process, and invasion of privacy,  in retaliation for their efforts to hold government and government officials responsible for their actions.

29. The NSA in collaboration with other national security officials and agencies of the U.S. Government sought to develop the technical capabilities, technologies, and computer software to engage in surveillance of individual human activities and communications on the internet (also known as the world wide web), telephones and other communications, and "harvesting" of personal data.

30. Unknown to the Plaintiffs at the time, in the wake of 9/11, then Vice President Dick Cheney (speaking for the President) ordered the NSA and other national security agencies to suspend legal restrictions on their surveillance activities, including by engaging in the collection, storage, and analysis of communications among U.S. citizens within the territorial United States.

31. Before the Plaintiffs previously-planned retirements spread over 2001 and 2002, the Plaintiffs worked in various roles on developing and perfecting a candidate program called THINTHREAD which was capable of performing the technical work desired by the NSA for surveillance of the internet efficiently, effectively, and at very low cost.

32. THINTHREAD was put into operation successfully but only on a demonstration basis. It was approved to demonstrate that it worked, but not officially commissioned for actual operational use.

33. Despite the Plaintiffs demonstrating that THINTHREAD actually worked, the NSA ignored THINTHREAD as a candidate for performing the desired surveillance of the internet and telephone communications, because THINTHREAD was inexpensive and highly effective, yet Lt. General Michael Hayden had made a corporate decision to "buy" externally rather than "build" internally the solution deemed necessary to harvest internet data.

34. Instead, the NSA and other Defendants favored an extremely expensive alternative called TRAILBLAZER costing approximately 1000 times as much ($4 billion instead of $4 million) which had not been demonstrated to work and ultimately in 2006 was said to be terminated prior to being completed.

35. The NSA and other Defendants pushed TRAILBLAZER at a $4 billion budget instead of THINTHREAD at a $4 million budget in order to funnel taxpayer funds to a well-connected, well-known government contractor SAIC, benefit SAIC and other contractors, curry favors politically, elevate NSA's budget allocation, and develop opportunities for private sector jobs for themselves later.

36. The Plaintiffs also built into THINTHREAD software safeguards and protections consistent with U.S. law prohibiting the surveillance of U.S. citizens or surveillance within the domestic territory of the United States without a warrant from a court.

37. In 2002, Plaintiffs Binney, Wiebe, Roark, and Loomis filed a complaint with the DoD's Inspector General for waste, fraud, and abuse in the expenditure of taxpayer funds to develop the more expensive $4 billion approach advocated and overseen by politically-well-connected SAIC, which had yet to be built, rather than using the less expensive, readily available $4 million THINTHREAD project, which had been live-tested by the NSA in actual operation as a prototype as early as 2000.

38. The Inspector General of DoD investigated the complaint and wrote a report which has been described to the Plaintiffs by those who have read it as a scathing indictment of the NSA's waste of taxpayer funds by pursuing the wasteful, more-expensive alternative from SAIC.  The report is believed to be titled "Requirements for the Trailblazer and Thinthread Systems."

39. In December 2005, Eric Lichtblau and James Risen published an article in <u>The New York Times</u> revealing that the NSA and other U.S. Government national security agencies were engaged in illegal surveillance of U.S. citizens within the domestic United States.

40. In fact, the primary leaker known was Thomas Tamm, a lawyer at U.S. Department of Justice working with the FISA Court, and apparently others unknown to the Plaintiffs according to James Risen and Eric Lichtblau.

41. Thomas Tamm began talking to <u>The New York Times</u> in mid-2004.

42. <u>New York Times</u> reporter James Risen has taken the unusual step of specifically denying that he ever talked to any of the Plaintiffs who sue here about any of the leaked information, rather than taking the normal approach of refusing to comment on his confidential sources as a journalist.

43. In the Fall of 2004, before the Presidential election, reporter James Risen called then NSA Director Michael Hayden for his reaction to the story.

44. As a result, the NSA was alerted in the Fall of 2004 that someone was leaking to the <u>New York Times</u>.  The NSA had over a year before eventual publication to investigate and determine that the Plaintiffs here had nothing to do with the leak to the <u>New York Times</u>.

45. Then after the <u>New York Times</u> published a series about the story in December 2005, the NSA in collaboration with the FBI and other government officials launched a series of unlawful, fraudulent, and malicious raids, accusations, investigations, and searches and seizures of the Plaintiffs' property, homes, and work places purely to harass, intimidate, harm, and retaliate against the Plaintiffs out of spite, anger, bitterness, and hostility regarding Plaintiffs' efforts on behalf of taxpayers and citizens' civil liberties.

46. Starting on July 26, 2007, Plaintiffs Binney, Wiebe and Roark were simultaneously raided by the FBI after an unnotified FBI entry at Roark's home, in retaliation against the Plaintiffs for their reporting the wasteful practices of the NSA, and at the instigation of the Defendants.  The FBI similarly raided and searched Plaintiff Loomis at his place of business and then followed him home to search his home soon after.

47. In November 2006, Plaintiff Drake was raided by the FBI, in retaliation for his active assistance to the IG investigators and his protests about NSA domestic surveillance within proper channels at NSA, Congress and elsewhere, at the instigation of the Defendants.

48. At no time did the Defendants have probable cause to engage in searches or seizures of the Plaintiffs' property, documents, records, or papers, detain them, or invade their residences or places of business.

49. Furthermore, the searches were not conducted so as to be remotely targeted with any particularity to even the subject matter of the false affidavit used to justify the searches. The searches conducted were open-ended fishing expeditions unrelated to any probable cause.

50. In fact, the affidavit for the search warrants are themselves based upon an illegal, warrantless phone tap and refer to a conversation illegally intercepted between Plaintiff Roark and Plaintiff William Binney, although misrepresenting the call's contents. Further, the ultimate pretext for the search, a paper describing THINTHREAD at a high level that Binney had given the FBI, was falsely claimed by NSA to be classified. Thus, the search warrant affidavit is not only false but illegal.

51. The Defendants' harassment of the Plaintiffs was never based on any probable cause, plausible justification, and was knowingly false and was motivated purely by retaliation.

52. The Defendants' harassment of the Plaintiffs was open-ended and unlimited and not limited to investigation or searches or seizures supported by probable cause.

53. Moreover, as later revealed by Edward Snowden, the NSA was even then, with the assistance of cooperating telephone and telecommunications companies, conducting mass interception and surveillance of all telephone calls within the domestic United States for the very purpose – at least so they claimed – of detecting both external and internal threats against the national security of the United States.

54. Therefore, through those phone and internet records, the Defendants had actual evidence at the time of the false affidavit and retaliatory searches and seizures that none of the Plaintiffs had communicated with the <u>The New York Times</u> or other journalists, except that Plaintiff Drake on his own had spoken confidentially with regard to public and /or unclassified information to the <u>Baltimore Sun.</u>

55. The Defendants further caused the security clearances of the Plaintiffs to be cancelled, causing the loss of jobs, careers, business opportunities and income, as well as forcing expenditures to defend themselves legally and seek return of their property.

56. The Plaintiffs never received due process. They were never informed why their security clearances were being suspended or given any opportunity to be heard in order to retain their employment and security clearances.

57. Only years later, after the fact, in 2013, did some of the Plaintiffs eventually learn some information about the loss of their security clearances as a *fait accompli* by then.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### *Whistleblower Protection Act*

58. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

59. The Intelligence Community Whistleblower Protection Act (ICWPA) of 1998 protects federal whistleblowers who work for the intelligence agencies of the U.S. Government and report agency misconduct.

60. The ICWPA amends the Central Intelligence Agency Act of 1949 to authorize an employee or contractor of the CIA who intends to report to the Congress a complaint or information with respect to an urgent concern to report to the IG of the CIA. The ICWPA requires the IG to act on such complaint or information within 60 days and to forward such complaint to the CIA Director.  The ICWPA requires the Director to forward such information to the Permanent Select Committee on Intelligence of the House of Representatives and the Select Committee on Intelligence of the Senate within seven days after its receipt.  The ICWPA Allows an employee to contact the intelligence committees directly concerning such complaint or information in limited circumstances.

61. The Whistleblower Protection Act of 1989, Pub.L. 101-12 as amended protects federal whistleblowers who work for the government and report agency misconduct.

62. A federal agency violates the Whistleblower Protection Act if agency authorities take (or threaten to take) retaliatory personnel action against any employee or applicant because of disclosure of information by that employee or applicant critical of government mis-management or mis-use of funds.

63. The Whistleblower Protection Act requires:

> **§ 2302. Prohibited personnel practices**
> (b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority —
> > ...
> (8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of —
>
> (A) any disclosure of information by an employee or applicant *which the employee or applicant reasonably believes* evidences —
> > (i) a violation of any law, rule, or regulation, or
> > (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive Order to be kept secret in the interest of national defense or the conduct of foreign affairs; or
> (B) any disclosure to the Special Counsel, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences —
> > (i) a violation of any law, rule, or regulation, or
> > (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;

*(Emphasis added.)*

64. The Defendants in concert and each of them individually knowingly, willfully, and intentionally retaliated against the Plaintiffs in retaliation for the Plaintiffs reporting of bad government decisions in the mishandling of taxpayer funds and trampling the rights of citizens.

## SECOND CAUSE OF ACTION
### *Fourth Amendment Violation:  Illegal Searches and Seizures*
### *(Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics)*

65. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

66. Plaintiffs enjoy a liberty interest in their persons, papers, documents, records, residences, and places of business against unreasonable searches and seizures by the government without due process of law, as guaranteed by the Fourth Amendment to the U.S. Constitution.

67. At no time did the Defendants have probable cause sufficient to justify the searches and seizures of their property, papers, documents, records, residences, or places of business.

68. On the contrary, the Defendants acted with willful and knowing hostility to retaliate against the Plaintiffs for criticism of the waste of taxpayer funds, and to silence, intimidate, threaten, and harm the Plaintiffs.

69. The violations of this liberty interest are compensable under *Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

**THIRD CAUSE OF ACTION**
***Fifth Amendment Violation: Illegal Detention as False Imprisonment***
***(Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics)***

70. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

71. Plaintiffs enjoy a liberty interest in their persons of not being deprived of liberty by actions of the government without due process of law, as guaranteed by the Fifth Amendment to the U.S. Constitution.

72. At no time did the Defendants, each and every one of them acting in concert, have probable cause sufficient to justify the searches and seizures of the Plaintiffs' property, papers, documents, records, residences, or places of business, nor to detain or question the Plaintiffs in association with those searches.

73. On the contrary, the Defendants acted with willful and knowing hostility to retaliate against the Plaintiffs for criticism of the waste of taxpayer funds, and to silence, intimidate, threaten, and harm the Plaintiffs.

74. Unlawful detention for even short periods contrary to law is false imprisonment.

75. The Defendants directly and indirectly caused the illegal detention, restraint, and temporary imprisonment of the Plaintiffs in association with the raids on their homes and/or places of businesses.

76. The violations of this liberty interest are compensable under *Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

### FOURTH CAUSE OF ACTION
***Fifth Amendment Violation:  Deprivation of Security Clearances,***
***Employment, and Income without Due Process of Law***
***(Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics)***

77. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

78. Plaintiffs enjoy a liberty interest in their persons of not being deprived of property by actions of the government without due process of law, as guaranteed by the Fifth Amendment and the Fourteenth Amendment to the U.S. Constitution.

79. A right, including a status such as a permit, license, or security clearance,  conferred according to law by the government is a property interest which the government may not deprive a citizen of without due process of law.  *See, generally, Goldberg v. Kelly*, 397 U.S. 254 (1970) (government benefits once conferred become a property interest).

80. The Defendants did not provide notice, an opportunity to be heard, or a decision by a neutral tribunal or decision maker prior to depriving the Plaintiffs of security clearances and the associated opportunity to make a living.

81. The violations of this liberty interest are compensable under *Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

## FIFTH CAUSE OF ACTION
### *Fifth Amendment Violation:  Deprivation of Property*
### *(Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics)*

82. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

83. Plaintiffs enjoy a liberty interest in their persons of not being deprived of property by actions of the government without due process of law, as guaranteed by the Fifth Amendment and the Fourteenth Amendment to the U.S. Constitution.

84. The Defendants seized the Plaintiffs property illegally, without probable cause, during the course of illegal searches and seizures.

85. The Defendants did not return property seized until the Plaintiffs sued for its return and then returned only some of the property seized.

86. The violations of this liberty interest are compensable under *Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

## SIXTH CAUSE OF ACTION
### *Fifth Amendment Violation:  Deprivation of Free Speech Under the First Amendment*
### *(Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics)*

87. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

88. Plaintiffs enjoy a liberty interest in their persons of not being deprived of their rights of free speech, including criticizing bad government decisions, as guaranteed by the First Amendment to the U.S. Constitution.

89. The Defendants violated the constitutional and civil rights of the Plaintiffs by attempting to charge them with conspiracy and for years to impede their free association with each other as well as chill exercise of Plaintiff's First Amendment right to free speech, most especially political speech criticizing government's bad decisions, in retaliation for their prior exercise of such political speech.

90. The violations of this liberty interest are compensable under *Bivens v. VI Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

## SEVENTH CAUSE OF ACTION
### *Deprivation of Civil Rights:  First Amendment and Due Process Rights*
### *(42 U.S.C. §1983 and 42 U.S.C. §1985)*

91. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

92. The Defendants' actions and their omissions with regard to their duties to act constitute knowing and intentional deprivation of the Plaintiffs rights by government action, including in discrimination, with the intent to chill, and in retaliation and punishment for the exercise of the Plaintiffs' First Amendment rights to criticize bad government decisions.

93. By the acts and omissions of the Defendants described above, the Defendants and each of them individually deprived the Plaintiffs of his constitutional rights to equal protection of the laws and equal privileges guaranteed by the First Amendment to the United States Constitution, as reinforced by the Fourteenth Amendment.

94. By the acts and omissions of the Defendants described above, the Defendants and each of them individually deprived the Plaintiffs of their constitutional rights.

95. At all times relevant to this Complaint, the Defendants and each of them individually acted willfully and intentionally to violate the Plaintiffs' civil and constitutional rights and/or acted with reckless disregard of whether their conduct violated the Plaintiffs' civil and constitutional rights.

96. In the actions described above, the Defendants and each of them individually violated the provisions of 42 U.S.C. 1983 to the injury of the Plaintiffs.

97. The Defendants conspired with one another to violate the civil and constitutional rights of the Plaintiffs and in so doing violated the provisions of 42 U.S.C. §1983 and 42 U.S.C. §1985 to the injury of the Plaintiffs.

## EIGHTH CAUSE OF ACTION
### *Intentional Infliction of Emotional Distress*

98. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

99. The Defendants knowingly and intentionally acted to threaten, intimidate, frighten, and harm the Plaintiffs including to chill, retaliate against and punish the Plaintiffs for the exercise of the Plaintiffs' First Amendment rights to criticize bad government decisions.

100.     The Defendants harmed the Plaintiffs out of spite, bitterness, anger, and animosity in retaliation for the Plaintiffs' professional critiques and suggestions for and criticism of the optimal and unwise options for use of taxpayer funds to achieve the best results for the government.

101.     Defendants' actions and omissions were intended to frighten, threaten, intimidate, and manipulate the Plaintiffs by causing them emotional distress.

102.     Defendants' actions and omissions were willful malicious, deliberate, or were done with reckless indifference to the likelihood that such behavior would cause severe emotional distress and with utter disregard for the consequences of such actions.

103.     Defendants' conduct is unreasonable and outrageous and exceeds the bounds tolerated by decent society, and was done willfully, maliciously and deliberately, or with reckless indifference, to cause Plaintiffs severe mental and emotional pain, distress, and anguish and loss of enjoyment of life.

## NINTH CAUSE OF ACTION
### *Malicious Prosecution*

104.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

105.     The Defendants caused prosecution, investigation, searches and seizures of the Plaintiffs not for legitimate purposes or based upon probable cause but out of retaliation, spite, bitterness, anger, and animosity due to the Plaintiffs' professional critiques and suggestions for the best use for taxpayer funds to achieve the best results for the government.

## TENTH CAUSE OF ACTION
### *Abuse of Process*

106.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

107.     The Defendants committed the tort of abuse of process against the Plaintiffs by using legal process in law enforcement and in the courts not for legitimate purposes or based upon probable cause but out of retaliation, spite, bitterness, anger, and animosity

due to the Plaintiffs' professional critiques and criticism of the best use for taxpayer funds to achieve the best results for the government.

## VI.        **PRAYER FOR RELIEF**

With regard to all counts, Plaintiffs demands that judgment be entered against Defendants each and every one of them, jointly and severally, for compensatory and actual damages because of their demonstrable personal, professional, financial, physical and emotional injury to Plaintiffs, punitive damages in excess of $100 million because of Defendants callous and reckless indifference and malicious acts, and attorneys fees, costs, an award in excess of $2.5 million for each Plaintiff in lost wages and employment and other costs, or in excess of $12.5 million for all Plaintiffs, in an amount to be determined by the jury, equitable relief in the form of  preliminary and permanent injunctions, and such other relief the Court may deem just and proper.

### **JURY DEMAND**

**Plaintiffs respectfully demand a jury trial on all issues so triable.**

Dated:  August 20, 2015                                Respectfully submitted,


                                                       */s/ Larry Klayman*
                                                       Larry Klayman, Esq.
                                                       Washington, D.C. Bar No. 334581
                                                       2020 Pennsylvania Avenue N.W.
                                                       Suite 800
                                                       Washington, D.C. 20006
                                                       (310) 595-0800
                                                       leklayman@gmail.com

                                                       Attorney for Plaintiffs